RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRENDAN LYSHE,

               *Plaintiff-Appellant,*

    *v.*

YALE R. LEVY; LEVY & ASSOCIATES, LLC; KIRSCHENBAUM, PHILLIPS & LEVY, PC; KRISHNA VELAYUDHAN,

               *Defendants-Appellees.*

No. 16-4026

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00516—Michael H. Watson, District Judge.

Decided and Filed: April 20, 2017

Before: GUY, SILER, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Steven C. Shane, Bellevue, Kentucky, Stephen R. Felson, Cincinnati, Ohio, for Appellant. Boyd W. Gentry, LAW OFFICE OF BOYD W. GENTRY, LLC, Beavercreek, Ohio, for Appellees.

_____

## OPINION

_____

BERNICE BOUIE DONALD, Circuit Judge. Yale R. Levy, Levy & Associates, LLC, Kirschenbaum, Phillips & Levy, PC, and Krishna Velayudhan (collectively, "Appellees") brought a collection action against Brendan Lyshe. Alleging that Appellees' discovery requests violated state procedural rules, Lyshe brought a claim for relief under the Fair Debt Collection

Practices Act ("FDCPA"). For the following reasons, we conclude that Lyshe did not suffer any concrete harm from Appellees' alleged state procedural violations. Accordingly, we **AFFIRM** the district court's judgment dismissing his claim for lack of jurisdiction.

I.

In 2016, Appellees brought a collection action against Lyshe. Soon after bringing the action, Appellees served Lyshe with discovery requests. They did not send a separate electronic copy, but instructed Lyshe to contact them if he would like an electronic copy. As part of the discovery, the requests for admission required that Lyshe verify that his responses were "true and correct to the best of [his] knowledge, information and belief," and included a blank notary block. Ex. C, ECF No. 1-3, Page ID 12. It further provided that any matter would be deemed admitted unless Lyshe made a sworn statement in compliance with the Ohio Rules of Civil Procedure.

Lyshe then brought suit, alleging that Appellees violated the FDCPA by failing to provide electronic discovery without prompting and requiring that the responses to the requests for admission be sworn and notarized. Appellees moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Relying on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the district court concluded that it lacked subject matter jurisdiction under Rule 12(b)(1), and dismissed the case on that ground. Specifically, it held that Lyshe did not plead any injury in connection with the alleged violations of the state procedural rules. According to the district court, Appellees did not violate the Ohio Rules of Civil Procedure by offering to send electronic copies of the discovery only upon Lyshe's request. Regarding the alleged errors in the requests for admissions, the district court reasoned that Lyshe failed to allege that he was misled, that he felt compelled to make a sworn verification or engage a notary, or that he even responded to the challenged requests, so his allegations were insufficient to confer jurisdiction upon the federal courts. Lyshe appeals, arguing that this court has subject matter jurisdiction and that his complaint states a claim upon which relief may be granted.

II.

Article III of the Constitution limits the jurisdiction of federals courts to hear only actual cases and controversies. U.S. Const. art. 3, § 2. The doctrine of standing aids us in defining

these limits. The plaintiff bears the burden of establishing standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To satisfy the "irreducible constitutional minimum of standing," the plaintiff must establish that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At dispute here is only whether Lyshe suffered an injury in fact. The existence of an abstract injury is insufficient for a plaintiff to carry his burden on this element. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Rather, a plaintiff must establish that he has a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013) (citing *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012)). We review such matters *de novo*. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

III.

Lyshe maintains that Appellees violated the Ohio Rules of Civil Procedure by (1) failing to provide electronic discovery without a request from Lyshe; and (2) stating that the requests for admissions must be sworn and notarized or else be deemed admitted, and that these errors violate the FDCPA.[1] Lyshe contends that prior to *Spokeo*, circuit case law established that a debt collector's failure to follow state law procedural rules violated the FDCPA. He reasons that

---

[1]As relevant here, the discovery rules under the Ohio Rules of Civil Procedure state that a party serving interrogatories or requests for admission "shall serve the party with an electronic copy of the [discovery]. . . . provided on computer disk, by electronic mail, or by other means agreed to by the parties." Ohio R. Civ. P. 33(A), 36(A). The party may be relieved of this requirement if they are unable to comply. *Id.* Regarding requests for admission, the rules provide that the court may deem a matter admitted if the party fails to timely serve upon the party requesting the admission a response "signed by the party or by the party's attorney" or fails to comply with any other requirements of the rule. Ohio R. Civ. P. 36(A)(1), (3). We are skeptical about whether Appellees violated the Ohio rules with respect to the requirement to provide electronic discovery, but even assuming their failure to initially provide electronic discovery and their imposition of a requirement for notary verification are false, for the reasons discussed below, Lyshe still fails to establish standing.

although *Spokeo* seemed to reexamine Article III standing in the context of intangible damages, it did not change the rule of law for standing and did not eliminate standing for cases like the one here involving intangible injuries. According to Lyshe, Congress created a cognizable intangible injury under the FDCPA by banning deceptive conduct made in connection with collection of a debt.

The Supreme Court in *Spokeo* dealt with a plaintiff's standing to sue under the Fair Credit Reporting Act ("FCRA"). 136 S. Ct. at 1544. To further its aim of ensuring accurate credit reporting, the FCRA imposes liability on an individual who willfully fails to comply with any of its requirements, including the requirement to follow reasonable procedures to attain the maximum accuracy of consumer reports. *Id.* at 1545. The plaintiff brought suit under the FCRA against a consumer reporting agency for reporting inaccurate information about him in violation of the statutory requirements. *Id.* at 1546. In resolving this issue, the Court took the opportunity to clarify the injury-in-fact requirement for standing; specifically, the necessity that the injury be concrete. It noted that even intangible injuries can be concrete. *Id.* at 1549. Further, it observed that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578).

Yet, this does not eliminate the requirement that a plaintiff actually suffer harm that is concrete. Even though Congress may "identify intangible harms that meet minimum Article III requirements," *id.* at 1549, *Spokeo* emphasized that Congress could not "erase Article III's standing requirements by statutorily granting the right to sue," *id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). Importantly, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. To that end, though declining to take a position on whether the circuit court erred in finding the plaintiff had standing, the Court held that "bare procedural violation[s]," like the violation alleged by the plaintiff, could not satisfy the injury-in-fact requirement if it is "divorced from any concrete harm." *Id.*

Therefore, under *Spokeo*, Lyshe would have us hold that the FDCPA created a concrete harm—receiving false information in connection with debt collection activities—that he suffered when Appellees made misstatements in their discovery requests about state procedural rules. This view of the law is untenable.

Initially, though *Spokeo* allows for a bare procedural violation to create a concrete harm, the procedural violation alleged here—a violation of a state law procedure not required under FDCPA—is not the type contemplated by *Spokeo*, which dealt with the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent. The goal of the FDCPA is to eliminate abusive debt collection practices. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). Yet, the sort of harm alleged by Lyshe, namely, that he would have been required to visit a notary and contact Appellees to obtain electronic copies of the discovery, was not the type of harm the FDCPA was designed to prevent. Moreover, Lyshe does not even allege that he suffered this harm, and concedes that he is at no risk to suffer this harm. The harm alleged is insufficient to confer standing before the federal courts. An examination of our own precedents and those of our sister circuits supports our conclusion.

This circuit has had the occasion to interpret *Spokeo* and has concluded that a statutory violation in and of itself is insufficient to establish standing. For instance, the plaintiffs in *Soehnlen v. Fleet Owners Insurance Fund*, filed suit alleging that the defendants violated the Affordable Care Act by failing to comply with its mandate that health plans eliminate certain caps on benefits, which constituted a violation of their rights under the Employee Retirement Security Act ("ERISA"). 844 F.3d 576, 579–80 (6th Cir. 2016). We rejected the plaintiff's argument that a mere allegation that the defendants violated ERISA was sufficient to establish standing, instead holding that, armed with only these alleged violations the plaintiffs "[could] not hope to satisfy the concreteness prong of the injury-in-fact requirement." *Id.* at 582. Lyshe's case provides an even weaker case for standing because the procedural violations alleged are not of the FDCPA.

By contrast, in *Galaria v. Nationwide Mutual Insurance Co.*, when the plaintiffs brought suit under the FCRA after hackers stole their personal information from the defendants, we held

that the plaintiffs satisfied the injury-in-fact requirement by alleging that the theft of their personal information constitutes "a substantial risk of harm, coupled with reasonably incurred mitigation costs." 663 F. App'x 384, 385, 388 (6th Cir. 2016). Unlike Lyshe, the plaintiffs in *Galaria* alleged a concrete harm arising from the violation of the statute—a risk that their data would be used for fraudulent purposes, *id.* at 388—rather than just a violation of the statute. Notably, we observed that concerns about standing may arise where the alleged violation is procedural and the plaintiff suffered no harm, but that issue was not before us because the plaintiffs alleged a concrete injury. *See id.* at 391 n.4 (citing *Spokeo*, 136 S. Ct. 1540).

In support of his position, Lyshe points us to *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016) (per curiam). There, the Eleventh Circuit held that the plaintiff established standing by alleging that the defendant violated the FDCPA by failing to send her certain required disclosures, even though she suffered no actual harm from this error. *Id.* at 991, 995. Noting the Supreme Court's decision in *Spokeo*, *Church* held that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* at 994. According to *Church*, the plaintiff's harm in not receiving information to which she was statutorily entitled was sufficiently concrete to establish standing. *Id.* at 995. Under the theory espoused in *Church*, the FDCPA gave Lyshe a right—the right not to receive false information in connection with the collection of a debt—and Lyshe suffered harm arising from that right—receiving false information about state discovery procedures.

Notwithstanding the seeming persuasiveness of this authority, we decline to follow it for several reasons. First, this is an unpublished decision, which is not binding on the Eleventh, or any other Circuit. *See* U.S. Ct. of App. 11th Cir. Rule 36-2. Second, the reasoning employed by *Church* was rejected several months later in the published Eleventh Circuit decision in *Nicklaw v. Citimortgage, Inc.*, which dealt with a mere violation of a state law procedural rule like Lyshe alleges here. 839 F.3d 998, 1000 (11th Cir. 2016). In *Nicklaw*, the Eleventh Circuit was faced with the issue of whether the plaintiff had standing to sue when he alleged only that the defendant failed to record a satisfaction of the plaintiff's mortgage within the time period required by state law, even though the state-law violation had subsequently been remedied. *Id.*

The court held that the plaintiff's allegations were insufficient to establish standing. *Id.* It rejected the plaintiff's argument, utilized by *Church*, 654 F. App'x at 994, that the plaintiff suffered a concrete harm by the defendant's failure to comply with this rule simply because the state legislature intended to create a right to have the satisfaction of a mortgage timely recorded. 839 F.3d at 1002–03. Instead, the Eleventh Circuit noted that the plaintiff alleged neither harm nor a risk of harm, and emphasized that standing is not met simply because a statute creates a legal obligation and allows a private right of action for failing to fulfil this obligation. *Id.* at 1003 (citing *Spokeo*, 136 S. Ct. at 1550). We find this reasoning persuasive and more in line with *Spokeo*'s guidance.

Finally, the approach in *Church* that Lyshe would have us adopt is against the weight of the authority of our sister circuits. Take for instance the Eighth Circuit's decision in *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016). The allegations of the plaintiff there— that the defendant retained personally identifiable information in violation of the Cable Communications Policy Act, *id.* at 926—was, on its own, insufficient to establish standing. *Id.* at 929–31. "With the benefit of *Spokeo*'s guidance," *Braitberg* concluded that the plaintiff's failure to allege harm, namely, the disclosure of personal information to any third party, was fatal to his claim of standing. *Id.* at 930–31. Similarly, in *Strubel v. Comenity Bank*, the Second Circuit construed *Spokeo* to mean that (1) a plaintiff may establish standing based on an alleged procedural violation if Congress conferred that procedural right to protect a plaintiff's concrete interest and if that violation presents a risk of harm to that interest; and (2) even if Congress conferred procedural rights, a plaintiff's claim for standing fails if he cannot demonstrate a material risk of harm to the underlying interest. 842 F.3d 181, 190 (2d Cir. 2016).

Other circuits reach analogous results. *See, e.g, Beck v. McDonald*, 848 F.3d 262, 271 n.4 (4th Cir. 2017) (finding *Spokeo* inapplicable where the plaintiffs alleged that more than just statutory violations constituted an injury in fact); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the

[Telephone Consumer Protection Act]." (internal citations omitted)); *In re Horizon Healthcare Servs. Inc. Data Breach Litigation*, 846 F.3d 625, 637–40 (3d Cir. 2017) (concluding that *Spokeo* did not intend to change the traditional standard of establishing standing, observing that there may be instances where a mere procedural violation does not establish an injury in fact, but concluding that that issue was not before the court because plaintiffs alleged that defendants improperly disseminated their private information—"the very injury that FCRA is intended to prevent"); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (concluding that the plaintiff's allegation that the defendant did not truncate the expiration date on his receipt, as required by the Fair and Accurate Credit Transactions Act, did not establish harm or risk of harm sufficient to confer standing); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir. 2016) ("[B]ecause [the plaintiff's] 'concrete interest' in the plan . . . was not alleged to be at risk from the purported statutory deprivation, [the plaintiff has] not suffered any injury that was sufficiently 'concrete' to confer standing.").

Lastly, although Lyshe is correct that *Spokeo* clarified, rather than altered, our standing jurisprudence, his reliance on pre-*Spokeo* cases is misplaced. In the process of collecting the plaintiff's outstanding debt, the defendants in *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, served the plaintiff requests for admission that requested that the plaintiff admit things the defendants knew were not true, and failed to include an explanation, required under state law, that requests would be deemed admitted if the plaintiff failed to respond. 637 F.3d 939, 946, 952 (9th Cir. 2011). The Ninth Circuit concluded that these requests violated the FDCPA, notwithstanding the fact that the plaintiff timely denied all of the requests. *Id.* at 952. Unlike the instant case, the defendants intentionally misrepresented facts concerning the plaintiff's debt that they knew to be false, and did not inform the plaintiff that these falsities would be deemed true absent an objection from the plaintiff. The harm in *McCollough* arose from the abusive debt collection practices that the FDCPA was designed to prevent. Lyshe's reliance on *Sayyed v. Wolpoff & Abramson* is even further from the point. Though *Sayyed* involved a plaintiff's allegations that the defendant violated the FDCPA by serving interrogatories that did not state that they were from a debt collector and contained various false statements, it simply held that the defendants were not entitled to absolute immunity simply because these documents were made in the course of judicial proceedings. 485 F.3d 226, 228–32 (4th Cir. 2007). It was not

presented with the issue of whether such allegations were sufficient to confer it with jurisdiction, or even whether those allegations were sufficient to state a claim under the FDCPA.

IV.

In sum, we conclude that Lyshe's bald allegations of state procedural violations that did not result in any concrete harm are insufficient to confer standing before this court.  The harm suffered by Lyshe, namely, the mere prospect of a slightly less convenient discovery process, is not the type of abusive debt collection practice the FDCPA was designed to prevent; therefore, it is not a concrete harm.  Accordingly, we **AFFIRM**.