Ronald RICKETSON, Jr., Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., Defendant.

CASE NO. 1:16–CV–1165

United States District Court, W.D. Michigan, Southern Division.

Signed 07/18/2017

Theodore J. Westbrook, Westbrook Law PLLC, Grand Rapids, MI, for plaintiff.

Sidney Lawrence Frank, Frank Haron Weiner & Navarro PLC, Troy, MI, Tamara Elizabeth Fraser, Williams Williams Rattner & Plunkett PC, Birmingham, MI, for Defendant.

## OPINION AND ORDER

ROBERT J. JONKER, CHIEF
UNITED STATES DISTRICT JUDGE

Plaintiff noticed his credit report reflected a delinquency on his car loan. He notified Experian (and the other consumer reporting agencies) that this had to be a mistake because he had settled his dispute with the lender. The FCRA requires consumer reporting agencies ("CRAs") like Experian to reinvestigate items a consumer disputes and report results to the consumer. Experian admits it did not do that here, but says it was just an honest mistake, and that it ultimately removed the disputed item from Plaintiff's report within 30 days anyway for other reasons. Plaintiff says he suffered real injury nonetheless because Experian left the dispute hanging without reinvestigating and reporting back to him as the statute requires, generating a level of emotional distress for which he sought and received medical treatment. Both sides move for partial or complete summary judgment on the remaining claims [1] of negligent and willful violation of 15 U.S.C. § 1681i. The Court denies both motions.

## I. BACKGROUND

Plaintiff Ronald Ricketson, a resident of Byron Center, Michigan, owed an automobile debt to Credit Acceptance. Credit Acceptance sued Plaintiff in the 63rd District Court regarding that debt, but the parties stipulated to a dismissal with prejudice on December 26, 2014, each party bearing its own costs and fees (ECF No. 36–3). Subsequently, however, Credit Acceptance reported a negative tradeline on this debt to Defendant Experian, a consumer-reporting agency located in Ohio, and Equifax and Trans Union, other consumer-reporting agencies. Specifically, Plaintiff claims Credit Acceptance reported that Plaintiff had "voluntarily surrendered" the automobile at issue, and that he was "seriously delinquent on a $3,413 debt" to Credit Acceptance (ECF No. 36, PageID.329).

On April 2, 2015, Plaintiff sent Experian, Trans Union, and Equifax a letter disputing this tradeline and attempting to have it removed from his credit reports. Equifax and Trans Union removed the tradeline

---

1. Plaintiff voluntarily withdrew his claims under Section 1681e during the summary judgment briefing.

after conducting reinvestigations. Experian did not. Instead, when it received the letter on April 7, 2015, it classified the letter as "suspicious," a classification Experian gives to letters that appear to have been sent by someone other than the consumer. Experian says this was a mistake. The letter should not have been classified as "suspicious" and a reinvestigation should have been conducted. Plaintiff agrees there should have been a reinvestigation, but argues that a reasonable jury could conclude Experian's classification was not an honest mistake, but rather the natural result of an intentionally vague and ambiguous policy designed to limit reinvestigations and shift the onus back to the consumer to trigger the statutory process a second time before Experian actually goes through with it.

Whether by honest mistake or otherwise, Experian did follow its suspicious communication protocol here, rather than statutory reinvestigation. In line with its policy, Experian sent Plaintiff a letter informing him it had received suspicious correspondence, stating that it would not be initiating a dispute, and requesting Plaintiff to call a 1–855 number if he was truly trying to dispute a debt. The parties agree that Plaintiff did not pursue the matter further with Experian until the filing of this litigation. The parties also agree that Experian did not take any further action to reinvestigate or report any results to Plaintiff.

At some point, however, Experian did remove the disputed tradeline from Plaintiff's credit report. Experian says this happened within 30 days of Plaintiff's letter due to the fortuity of Experian receiving a "carbon-copy" of the response Credit Acceptance sent to Equifax, a different CRA that did conduct a reinvestigaton. Plaintiff is unwilling to stipulate that the deletion

occurred within 30 days, but did acknowledge that it does not have evidence to contradict Experian's claim. In any event, regardless of when Experian removed it, all agree it never informed Plaintiff. Plaintiff found out on his own no later than August 2016 (ECF No. 36, PageID.330). Plaintiff alleges he has suffered mental stress, lost sleep, and emotional distress as a result of Experian leaving him in the dark as to the status of the tradeline.

On August 26, 2016, Plaintiff filed his complaint in the 17th Judicial Circuit Court, naming Credit Acceptance, Equifax, and Experian as defendants (ECF No. 1–1). Defendant removed this case to federal court on September 22, 2016 (ECF No. 1–1). Subsequently, Plaintiff settled with Experian and stipulated to dismiss Credit Acceptance with prejudice. On May 12, 2017, Experian filed its Motion for Summary Judgment (ECF No. 34). That same day, Plaintiff filed its Motion for Partial Summary Judgment (ECF Nos. 35, 36). In his response to Defendant's Motion, Plaintiff withdraws his claim under 15 U.S.C. § 1681e(b) against Experian (ECF No. 40, PageID.541–542) ("Plaintiff hereby withdraws his claim under the 'reasonable procedures' requirements of 15 U.S.C. § 1681e(b)").[2] Accordingly, Plaintiff's sole remaining claim against Experian is for violation of 15 U.S.C. § 1681i.

## II. LEGAL STANDARDS AND ANALYSIS

Summary judgment is appropriate where the record evidence presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it is defined as such by substantive law and will affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**2.** The Court will dismiss the Section 1681e claim based on Plaintiff's withdrawal which

moots Experian's summary judgment motion on this issue.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute exists, precluding summary judgment, if the court finds that a reasonable jury could find for the nonmoving party. *Id.* The burden is on the moving party to show that no genuine dispute as to any material fact exists. FED. R. CIV. P. 56(c)(1). Summary judgment is required where, "after adequate time for discovery and upon motion ... a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court draws all inferences in a light most favorable to the nonmoving party. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992).

The FCRA requires a CRA to conduct a free reinvestigation of a consumer's file if "the completeness or accuracy of any item of information contained in a consumer's file ... is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A). After a reinvestigation, the CRA "shall provide written notice to a consumer of the result of a reinvestigation." § 1681i(a)(6)(A). "As part of, or in addition to, the notice ..., a [CRA] shall provide ... a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation ...." The FCRA provides a private right of action against CRAs for negligent and willful violations of the duty to conduct a reasonable reinvestigation under § 1681i(a). *See Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)).

Plaintiff Ricketson asserts Experian negligently and willfully violated § 1681i(a) by failing to perform a reinvestigation after receiving Plaintiff's dispute letter, failing to notify the furnisher of Plaintiff's dispute, and failing to provide Plaintiff with a credit disclosure within 30 days of Experian's receipt of Plaintiff's dispute letter (ECF No. 35, PageID.323). Because Defendant does not contest that it failed to follow the statutory process, Plaintiff says he should win summary judgment, at least in part. Experian disagrees and moves for summary judgment on four primary grounds, claiming that: (1) Ricketson suffered no concrete injury, and, as such, has no standing to raise his claim; (2) Ricketson is unable to demonstrate that an inaccuracy existed at all, and certainly within the statutory 30-day period, eliminating liability as a matter of law; (3) Ricketson is unable to demonstrate recoverable damages as a matter of law; and (4) Experian did not willfully violate the FCRA as a matter of law (ECF No. 34). The Court denies both motions for summary judgment.

### A. Standing

Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies." U.S. Const. art. 3, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff bears the burden of establishing standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). To satisfy the "irreducible constitutional minimum of standing," the plaintiff must establish the following:

> (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed.

*Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). Here, the parties' dispute centers on whether Ricketson suffered an injury in fact.

■ In *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), the Supreme Court recently dealt with a plaintiff's standing to sue under the FCRA. That case involved a plaintiff's suit against a CRA for reporting inaccurate information about him in violation of the statutory requirements. *Id.* at 1546. In that case, the Court clarified the injury-in-fact requirement for standing, emphasizing that the injury must be concrete. *Id.* at 1549. The Court observed that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). Yet, although Congress may "identify intangible harms that meet minimum Article III requirements, *id.* at 1549, Congress may not "erase Article III's standing requirements by statutorily granting the right to sue." *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). Importantly, "Congress's role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. The *Spokeo* Court held that "bare procedural violation[s]," did not satisfy the injury-in-

fact requirement if "divorced from any concrete harm." *Id.* Instead, in evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court instructed courts to consider: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and (2) the judgment of Congress, which "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (citations omitted).

The Sixth Circuit recently applied *Spokeo* in the FCRA context in *Galaria v. Nationwide Mutual Insurance Co.* 663 Fed.Appx. 384, 385 (6th Cir. 2016). In that case, plaintiffs brought suit under the FCRA after hackers stole their personal information from the defendants. The Sixth Circuit held that the plaintiff satisfied the injury-in-fact requirement by alleging that the theft of their personal information constituted "a substantial risk of harm, coupled with reasonably incurred mitigation costs." *Id.* at 385, 388.

■ Here, Plaintiff's section 1681i claim is based on something more than a "bare procedural violation" that cannot "cause harm or present any material risk of harm." *Spokeo*, 136 S.Ct. at 1549–50. Plaintiff's claim relates directly to harms the FCRA was meant to address—the risk of inaccurate information in a consumer's file and the inability of consumers to correct that information and receive assurance from a CRA after reinvestigation.[3] A

3. The Sixth Circuit recently reaffirmed the importance of the relation between a plaintiff's claim and the harms sought to be addressed by a statutory scheme for standing purposes in *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017). *Lyshe* involved a debtor's allegations that a debt collection agency's misstatements regarding state procedural rules in its discovery requests in a collection action vio-

lated the FDCPA. *Id.* at 858. The Sixth Circuit held these allegations were insufficient to establish an injury in fact under *Spokeo*. *Id.* The Court reasoned that the harm alleged by the debtor, i.e., that he would have been required to visit a notary and contact an agency to obtain electronic copies of the discovery, was not the type of harm the FDCPA was designed

central purpose of the FCRA is "to ensure 'fair and accurate credit reporting.'" *Spokeo*, 136 S.Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). Through the FCRA, "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. Congress also "emphasized that 'the consumer has a right . . . to correct any erroneous information in his credit file." *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 633 (E.D. Va. 2016) (citing S. Rep. No. 517, 91st Cong., 1st Sess. 2 at 2). As a result, Congress sought "to establish [ ] the right of a consumer to be informed of investigations into his [or her] personal life." *Id.* (citing S. Rep. No. 517, 91st Cong., 1st Sess. 2 at 1). The FCRA's disclosure provisions, including § 1681i, promote consumer oversight of compliance with the FCRA by informing consumers of the completeness or accuracy of any item of information contained in their file, and the results of any reinvestigation by the consumer reporting agency into those issues. *See Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (stating that the primary purpose of the disclosure requirement is to "allow consumers to identify inaccurate information in their credit files and correct this information").

Courts have recognized this type of "informational injury" in several different contexts, before and after *Spokeo*, and have held it sufficient to establish an injury-in-fact. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–75, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (housing discrimination tester had standing to bring claims under the Fair Housing Act based on the "alleged injury to her statutorily created right to truthful housing information"); *Sayles v. Advanced Recovery Systems, Inc.*, No. 16–60640, 2017 WL 2872343, at *3 (5th Cir. July 6, 2017) (holding that inaccurate credit rating exposed plaintiff to "real risk of financial harm" for purposes of standing under the FDCPA); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 992–95 (11th Cir. 2016) (holding that under *Spokeo*, plaintiff had standing to sue for defendant's failure to include disclosures required by the FDCPA); *Anda v. Roosen Varchetti & Olivier, PLLC*, No. 1:14-cv-295, 2016 WL 7157414, at *5 n.2 (W.D. Mich. Oct. 31, 2016) (holding that FDCPA Defendants' alleged use of false and misleading information was sufficient to establish standing post-*Spokeo* ). Moreover, "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Thomas*, 193 F.Supp.3d at 636 (holding plaintiff established a concrete injury resulting from defendant's failure to provide the "clear and conspicuous" disclosure required by the FCRA).

The concrete harm from the informational injury alleged in this case can take many forms, including the emotional distress Plaintiff claims to have suffered. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332–33 (9th Cir. 1995) (holding that "actual damages" under the

---

to prevent and the debtor did not allege he actually suffered other harm as a result of alleged violations. *Id.* at 859. *Lyshe* is distinguishable from this case on precisely that basis. Here, the harm Plaintiff alleges—being misled and not adequately informed by a CRA—is the type of harm that the FCRA was designed to prevent. *See Spokeo*, 136 S.Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). In fact,

as Plaintiff noted during oral argument, the focus of Section 1681i is on the integrity of information in the consumer's file, and on the consumer's peace of mind in knowing about the CRA's conclusion after reinvestigation. Those concerns apply regardless of whether the information is ever disclosed to a third party. Other parts of the FCRA focus on the dissemination risk more pointedly.

FCRA "include[s] recovery for emotional distress and humiliation"); *Davis v. Astrue*, 874 F.Supp.2d 856, 863 (N.D. Cal. 2012) ("[M]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing"). Such harm can also take the form of a risk of harm or uncertainty regarding credit prospects, such as Plaintiff's claim that he was not provided with any prescreened credit offers as a result of the negative tradeline and did not apply for an automotive loan because he believed he was not eligible for credit on reasonable terms (ECF No. 36–11, PageID.421). *See Larson v. Trans Union, LLC*, 201 F.Supp.3d 1103, 1108 (N.D. Cal. 2016) (holding plaintiff's allegations that misleading credit report left him uncertain as to whether agency was reporting him as a match to an individual in the Treasury's OFAC database and whether he had right to dispute that information was sufficient to establish standing). These types of harms are precisely what Congress was attempting to prevent when it mandated what disclosures consumer credit reporting agencies must make to consumers: a risk that the consumer is not made aware of material inaccurate information in the consumer's file, or of how to dispute and remove the inclusion of such harmful information. Accordingly, Plain-

tiff's allegations present a degree of risk sufficient to satisfy Article III's injury-in-fact requirement.[4] *See Spokeo*, 136 at 1550.

## B. Section 1681i Claim

The parties cross-move for summary judgment (or partial summary judgment) on the merits of the Section 1681i claim.

### 1. Inaccuracy

Defendant argues Plaintiff's claim fails because "Plaintiff cannot show that anything was inaccurate[.]" (ECF No. 34, PageID.160). Conversely, Plaintiff states that it is undisputed that the tradeline was inaccurate because "CAC acknowledged this fact by notifying the other CRAs, Equifax and Trans Union, that the tradeline was inaccurate in response to Plaintiff's dispute sent to those CRAs." (ECF No. 36, PageID.334). Additionally, Plaintiff asserts that "since CAC's lawsuit against Plaintiff to collect the purported debt has been dismissed with prejudice as of December 2014, Plaintiff owed no debt to CAC," and so Experian's file showing a delinquent CAC debt was inaccurate as a matter of law. (ECF No. 40, PageID.534).

■ The weight of authority in other circuits holds that a claim under § 1681i fails without a showing that the reported information was inaccurate,[5] but the Sixth

---

**4.** Defendant cites *Lindsey v. Experian Information Solutions, Inc.*, No. 2:15-cv-02353-AKK, 2017 WL 412889 (N.D. Ala. Jan. 31, 2017), for the proposition that Plaintiff must present evidence that a third party requested or received a credit report that included the negative tradeline in order to have standing in this case. That case is not binding authority on this Court, however, and apart from the Northern District of Alabama, Plaintiff has not pointed to any other cases adopting that rule. Moreover, *Lindsey* is distinguishable because the plaintiff in that case "explicitly disavowed any claim for mental anguish or emotional distress" and knew that the tradeline had been removed within 13 days of filing a dispute with Experian. *Id.* at 2, 3 n.3. By contrast, here Plaintiff alleges he suffered

emotional distress because Experian labeled Plaintiff's dispute as "suspicious," told him that it would not be initiating a dispute, and failed to notify him that it had deleted the negative tradeline.

**5.** *See Dennis v. BEH–1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (Section 1681i creates no duty to reinvestigate where "the credit report accurately reflect[s] the status of the information contained in the public records") (citing *Williams v. Colonial Bank*, 826 F.Supp. 415, 418 (M.D. Ala. 1993)); *Kuehling v. Trans Union, LLC*, 137 Fed.Appx. 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA—either § 1681e(b) or

Circuit has held that "it is unclear whether a showing of inaccuracy is required for § 1681i liability." *Dickens v. Trans Union Corp.*, 18 Fed.Appx. 315, 319 (6th Cir. 2001). As to other sections of the FCRA, the Sixth Circuit has held that reporting is accurate as long as it is technically accurate, or accurate on its face, stating:

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Id.* at 318 (quoting *Cahlin*, 936 F.2d at 1156). A consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth Circuit. *See, e.g., Elsady v. Rapid Global Business Solutions, Inc.*, No. 09-11659, 2010 WL 742900 (E.D. Mich. 2010) ("[A]t a minimum, a plaintiff must provide that a creditor or consumer of credit reports would be misled. When a recipient was not misled, such a showing will be extremely difficult."). Only "factual inaccuracies" qualify, not "legal issues" that CRAs are "neither qualified nor obligated to resolve under the FCRA." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008).

■ It is not necessary to resolve the issue here because even assuming a showing of inaccuracy is required under § 1681i, genuine disputes of material fact remain regarding the accuracy of Plaintiff's file. As an initial matter, it is unclear from the record exactly what information

Plaintiff's Experian file contained. At most, the parties seem to agree that Plaintiff's file contained a "negative CAC tradeline" and showed a "delinquent CAC debt" with a balance of $3,413.00. *Id.* In any event, the "carbon copy" notice from the creditor itself is surely enough all by itself to support a reasonable fact-finder's conclusion that the tradeline was inaccurate. Indeed, even Experian says it relied on the notice to delete whatever it had on its report about the item.

Defendant next argues that even if the file was inaccurate, there can be no liability because it removed the disputed item within 30 days. Essentially, Defendant contends that it can avoid any obligation to conduct reinvestigation and to notify the consumer simply by removing the disputed item within 30 days for any reason or no reason.

■ The Court disagrees. The plain language of Section 1681i provides that, after a Plaintiff disputes "the completeness or accuracy ... of [factual] information contained in a consumer's file" at a CRA, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate *and* record the current status of the disputed information, *or* delete the item from the file ... before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute ...." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Courts interpreting this section have held that, when triggered, it imposes a duty on a CRA to "reinvestigate free of charge *and either* record the current status of the disputed information *or* delete the item from the file as required by § 1681i(a)(5) within the 30-day period." [4] *Acton v. Bank One Corp.*, 293 F.Supp.2d

---

§ 1681i(a)(1)(A)"); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

4. The cases Defendant cites do not stand for the proposition that a CRA cannot be liable

under § 1681i if it deletes or modifies a consumer's file within the 30-day window regardless of whether it conducts a reinvestigation into that file. Instead, those cases hold that if a defendant performs a reinvestigation

1092, 1098 (D.Ariz. 2003) (citing *Waggoner*, No. 302CV1494G, 2003 WL 22220668, at *9 (N.D.Tex. July 17, 2003)) (emphasis added). It is clear, therefore, that upon receipt of a letter disputing the factual accuracy of information in a consumer's file, Section 1681i imposes a duty on a CRA both to reinvestigate *and* to either delete the disputed information or disclose the current status of the disputed information to the person disputing the information. As Plaintiff notes, adopting Defendant's construction of the section would write subsection 1681i(a)(6)—requiring a CRA to send notice of the results of reinvestigation—out of the statute.

Here, it is undisputed that Plaintiff sent Defendant a dispute letter. As a result, Defendant potentially had a duty under § 1681i to conduct a reinvestigation and to either delete or disclose the status of the disputed information within 30 days of receiving the letter. Defendant admits that it did not conduct a reinvestigation within that period—or ever—after receiving Plaintiff's letter (ECF No. 36–6, PageID.371–372). Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiff's § 1681i claim.

### 2. Reinvestigation

 Based on Defendant's admitted failure to reinvestigate and send the resulting disclosures and results, Plaintiff argues he is entitled to judgment as a matter of law as to Defendant's liability under § 1681i. Again, the Court disagrees because questions of fact remain as to whether Experian's statutory duty to conduct a reinvestigation was, in fact, triggered in this case. First, Experian may be

*and* deletes the information the plaintiff disputes within the 30-day window, it cannot be held liable under § 1681i. *See Grigoryan v. Experian Information Solutions, Inc.,* 84 F.Supp.3d 1044, 1078 (C.D. Cal. 2014); *Lawrence v. Trans Union LLC,* 296 F.Supp.2d 582, 587 (E.D. Penn. 2003).

able to persuade a jury that the disclosures it had were substantially accurate.[5] The Court cannot determine otherwise, as noted earlier, because the record is not clear as to what actually was on the report. Nor is it clear whether Plaintiff's dispute alleged a factual inaccuracy, as opposed to a legal issue. Moreover, even if Experian's admitted failure to reinvestigate and send the resulting disclosures creates prima facie liability, a CRA "can rebut liability by presenting a 'reasonable procedures defense.'" *Thomas v. Trans Union, LLC,* 197 F.Supp.2d 1233, 1237 (D. Or. 2002). "[T]he reasonable procedures defense is designed to protect users of credit information who consistently abide by the law but who, in dealing with hundreds or thousands of instances, ultimately, by commission or omission, inadvertently violate the law in isolated instances." *Id.* at 1237 (internal quotations and citation omitted). Experian contends it followed reasonable procedures in this case (ECF No. 34, PageID.159), and a jury will need to resolve the issue because each side has factual support for its position on the "suspicious communication" process. *See Thomas,* 197 F.Supp.2d at 1237 (holding that a "reasonable procedure defense creates a jury question"); *see also Guimond,* 45 F.3d at 1333 (holding that reasonableness will be jury question "in the overwhelming majority of cases"). Accordingly, Plaintiff is not entitled to judgment as a matter of law on the issue of Defendant's liability under § 1681i.

### 3. Actual Damages

Defendant also claims it is entitled to judgment as a matter of law because

5. If inaccuracy remains a dispute in the FPTC process, the Court will address and resolve the legal issue as part of the FPTC process, or as part of a Rule 50 motion at trial.

Plaintiff cannot establish actual recoverable damages (ECF No. 34, PageID.163). Specifically, Defendant asserts that Plaintiff cannot establish any pecuniary harms and cannot fall back on emotional distress because he has failed to provide any evidence that the allegedly inaccurate information was published to a third party in this case. *Id.* Plaintiff concedes he has no pecuniary harm but argues that emotional distress is sufficient regardless of any disclosures to third parties. This Court agrees with Plaintiff's view on this.[6]

 "A credit reporting agency which negligently fails to comply with a requirement of the FCRA is liable for any actual damages sustained by a consumer. Specifically, a negligent violation of . . . FCRA § 1681i(a) subjects a credit reporting agency to liability for any actual damages sustained as a result of the violation, costs of court, and reasonable attorney's fees." *Waggoner*, 2003 WL 22220668, at *5 (parentheticals and citations omitted). The plaintiff "has the burden of proving that his damages were caused by the defendant's violations of the FCRA." *Zala v. Trans Union*, No. 99-cv-0399, 2001 WL 210693, at *6 (N.D. Tex. Jan. 17, 2001) (citation omitted).

 Damages recoverable under the FCRA "may include humiliation or mental distress." *Bach v. First Union Nat. Bank*, 149 Fed.Appx. 354, 361 (6th Cir. 2005) (citation omitted); *see also Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993). "Courts have allowed recoveries where . . . the plaintiff suffered mental anguish based on events other than a denial of credit." *Zala*, 2001 WL 210693, at *7 (citations omitted). "An injured person's testimony alone may suffice to establish damages for emotional distress provided that [he] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Bach*, 149 Fed.Appx. at 361. Evidence of emotional distress "includes evidence of physical injury, medical treatment for any psychological or emotional injury, or other witness corroboration of any outward manifestation of emotional distress." *Murphy v. Midland Credit Mgmt.*, 456 F.Supp.2d 1082, 1093 (E.D. Mo. 2006) (citing *Forshee v. Waterloo Indus.*, 178 F.3d 527, 531 (8th Cir. 1999)).

Currently, a circuit split exists as to whether the disputed information must be published to a third party for a consumer to recover actual damages under § 1681i. In *Collins v. Experian Information Solutions, Inc.*, the Eleventh Circuit held "the plain language of the FCRA contains no requirement that the disputed information be published to a third party in order for a consumer to recover actual damages under § 1681i(a)." 775 F.3d at 1335. The Second Circuit, however, has held that a plaintiff cannot recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the inaccurate information from a credit reporting agency. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) ("[W]e do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency."). The Sixth Circuit has not yet ruled on this precise issue.

---

**6.** Plaintiff makes one further argument: namely, that even without measurable emotional distress, a Plaintiff should still be able to recover attorney fees as long as the plaintiff can show Article III injury in fact. In view of the Court's decision that third party disclosure is not a prerequisite to recovery of actual damages, it is not necessary to reach this issue.

This Court finds the Eleventh Circuit's holding in *Collins* persuasive and adopts it as its holding in this case. As the Eleventh Circuit noted in *Collins*, by its plain terms, Section 1681i(a) is aimed at ensuring the completeness or accuracy of *consumer files* retained by CRAs. 775 F.3d at 1335 (quoting § 1681i(a)). By contrast, Section 1681e(b) addresses the accuracy of *consumer reports* published to third parties. *See id.* (quoting § 1681e(b)). If Congress intended liability under Section 1681i(a) to be premised on publication to a third party, it would have spoken in terms of a consumer report, which is published, not a consumer file, which is kept private. *See id.* Instead, because Section 1681i(a) ties liability to inaccuracies in a consumer's *file*, a plaintiff is not required to show publication to a third party to establish actual damages under Section 1681i(a). *See id.*; *see also Nat'l Wildlife Fed. v. Gorsuch*, 693 F.2d 156, 172 (D.C. Cir. 1982) ("[U]nder usual rules of statutory construction, use of two different terms is presumed to be intentional.").

Here, Plaintiff alleges that Experian's failure to reinvestigate and send disclosures and results under Section 1681i resulted in actual damages including emotional and mental distress. Specifically, Plaintiff claims that beginning in April 2015, he "believed that he had an inability to obtain credit on reasonable terms, or at all, due to Experian's failure to comply with its legal obligations." Plaintiff also "believed he was unable to obtain an automotive loan ... [and consequently] suffered depression, increased anxiety, lost sleep, and mental stress in and after April

of 2015 ...." (ECF No. 34–9, PageID.206). Plaintiff has attached a June 25, 2015 medical report from his physician stating that Plaintiff's "blood pressure was up" and that he "is going through some stress." (ECF No. 36–17, PageID.469). Plaintiff's physician specifically tied these medical issues to Plaintiff's ongoing legal issues with CRAs, including Defendant Experian. *Id.*

▆▆▆ This Court holds Plaintiff's evidence creates a question of fact as to whether he suffered actual damages as a result of Defendant's actions. In addition to his own description of his emotional distress surrounding Defendant's actions, Plaintiff has provided his doctor's report that directly ties his increased blood pressure and stress to the ongoing credit dispute with Experian. Resolving these factual disputes and possible inferences in Plaintiff's favor, summary judgment on the issue of actual damages is inappropriate at this time.[7]

### 4. Willfulness

Lastly, Defendant contends that Plaintiff cannot show a willful violation of the FCRA as a matter of law. Specifically, Experian argues that categorizing Plaintiff's dispute letter as "suspicious" and its failure to conduct a reinvestigation was simply due to human error—a mistake—and therefore cannot be willful. Plaintiff responds that genuine issues of fact remain as to whether Defendant's policies and procedures for handling and sorting "suspicious" mail render its conduct reck-

---

7. Defendant cites *Flood v. Equifax Info. Servs., LLC*, No. 13-11813, 2014 WL 4243778, at *6 (E.D. Mich. Aug. 26, 2014), for the proposition that emotional damages are only available in "extreme cases." The *Flood* court, however, cited a Sixth Circuit case interpreting the Fair Credit Billing Act for that proposition. *Id.* at *7 (citing *Butler v. Sterling, Inc.*, No. 98-3223, 2000 WL 353502, at *8 (6th Cir. 2000)). Moreover, *Flood* dealt with a plaintiff whose sole claim to emotional distress rested on his conclusory statements in a personal affidavit he submitted to the court. *Id.* As discussed above, Plaintiff's evidence certainly exceeds his own conclusory assertions in this case.

**1096**

less in light of § 1681i's requirements, and therefore willful.

 Under 15 U.S.C. § 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual statutory, or punitive damages. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a). *Safeco*, 551 U.S. at 71, 127 S.Ct. 2201; *see also Harris*, 564 F.3d at 1310 ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law."). "[A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but . . . the company ran a risk of violat[ing] the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69, 127 S.Ct. 2201.

 Questions of fact remain as to whether Defendant's policy and procedures for labeling disputes such as Plaintiff's letter "suspicious," and consequently failing to conduct any reinvestigation into these disputes *at all*, is reckless in light of the FCRA's requirements. On the one hand, Defendant did not simply ignore Plaintiff's letter after receiving it. Instead, Experian allegedly sought to confirm the letter's authenticity, in part, by requesting that Plaintiff call a phone number and provide additional information regarding his dispute. Plaintiff, however, apparently did not take any action in this regard. At the same time, however, Defendant labeled Plaintiff's letter as suspicious despite the fact that Plaintiff provided his address, full name, social security number, signature, and copy of a court order regarding his debt (ECF No. 36-5). Additionally, upon receipt of the dispute, Defendant notified Plaintiff that it would not conduct a reinvestigation into his dispute—and, in fact, did not do so at any time. Defendant argues these actions were a mistake, but—apart from conclusory assertions—has not shown how its conduct in this regard violated any of its specific policies or procedures. Accordingly, Defendant has not sufficiently explained how its actions are an objectively reasonable way to discharge its responsibility to "conduct an investigation with respect to disputed information" as required by the FCRA. Whether Defendant's actions were a good-faith mistake or the natural and probable result of its policies and procedures is a question for the jury.[8]

**CONCLUSION**

**ACCORDINGLY, IT IS ORDERED** that Defendant's Motion for summary

8. Defendant has filed the recent Northern District of Ohio opinion in *Turner v. Experian Information Solutions, Inc.*, No. 3:16–cv–630, 2017 WL 2832738 (N.D. Ohio June 30, 2017), arguing it is persuasive authority establishing the reasonableness of its "suspicious" mail policy. The Court, however, remains unpersuaded that summary judgment on the issue of willfulness is appropriate in this case. It is not readily apparent to this Court that the *Turner* court's holding is a general pronouncement of the reasonableness of Experian's procedures in all cases or is confined to the specific facts of that case. *See Turner*, No. 3:16–cv–630 at 10 (basing its holding on "the undisputed facts" of that case). Moreover, Defendant itself insists that it "has maintained . . . in the current litigation the reasonableness of Experian's suspicious mail policy is not an issue ripe for adjudication before this Court." The Court believes that the reasonableness of Experian's suspicious mail policy certainly has bearing on the question of whether Experian's conduct was reckless in this case, but, as discussed above, that question is for the jury to decide.

judgment (ECF No. 34) and Plaintiff's Motion for partial summary judgment (ECF No. 35) are **DENIED.** Plaintiff's Section 1681e(b) claim is dismissed based on Plaintiff's withdrawing that claim.