# United States Court of Appeals for the Federal Circuit

---

**ROCKY MOUNTAIN HELIUM, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1278

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00336-SGB, Judge Susan G. Braden.

---

Decided: November 16, 2016

---

DAVID BERNARD BUSH, David B. Bush, LLC, Wheat Ridge, CO, argued for plaintiff-appellant.

RENEE BURBANK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ALLISON KIDD-MILLER, BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* TARANTO, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Rocky Mountain Helium, LLC sued the United States in the United States Court of Federal Claims, asserting breach of two contracts concerning Rocky Mountain's potential extraction of helium from beneath federal lands—the 1994 Helium Contract and the 2008 Settlement Agreement (the latter resolving a dispute centered on the former). The Court of Federal Claims found lack of jurisdiction over both claims and, in the alternative, dismissed the Helium Contract claim on the merits. We partly reverse the jurisdictional dismissal of the Helium Contract claim but affirm the merits dismissal of that claim. We reverse the jurisdictional dismissal of the Settlement Agreement claim and remand for further proceedings on that claim.

I

In 1994, Rocky Mountain and the United States Bureau of Land Management entered into the Helium Contract, under which the Bureau gave Rocky Mountain the right, for up to 25 years, to extract helium gas from roughly 21,000 acres of federal lands in Colorado and Utah. The Helium Contract (Federal Helium Contract FLL 94-001) stipulated that Rocky Mountain annually pay to the United States either rent of one dollar per acre (*i.e.*, roughly $21,000) or royalties based on the helium that Rocky Mountain extracted, whichever was greater. The Helium Contract also gave Rocky Mountain certain preferential rights to enter into a new agreement with the Bureau if the Bureau terminated the Helium Contract. If, within a year of such termination, the United States "elects to enter into an agreement [with another company] for the sale, extraction or other disposition of helium" that would be covered by the Helium Contract but for the termination, Rocky Mountain would have the right to step in and take that deal instead of the other company. J.A. 62.

Rocky Mountain never extracted helium from the property—which Rocky Mountain alleges was the result of inadequate cooperation from other firms whose oil and gas mining releases helium for collection. For one year, Rocky Mountain paid the rent due to the Bureau, then it stopped paying. J.A. 82 ("In nearly 15 years, [Rocky Mountain] has made no payment on its contract . . . ."). In December 2004, the Bureau informed Rocky Mountain that it had cancelled the Helium Contract due to non-payment. Rocky Mountain filed an administrative appeal with the Civilian Board of Contracts Appeals (CBCA). On August 29, 2008, before a CBCA decision, the parties entered into a Settlement Agreement.

Under the Settlement Agreement, within specified periods the Bureau had to direct certain oil and gas lessees of federal land to furnish the Bureau with specified information ("the Data") about gas composition on the federal lands covered by the Helium Contract, and the Bureau then had to provide "the Data" to Rocky Mountain. J.A. 70–71. Within 90 days of receiving "the Data," Rocky Mountain had to pay $116,579.90 (representing back rent) to the Bureau. J.A. 70. After those events occurred, the 1994 Helium Contract would be reinstated. Additional provisions specified certain interactions between the Bureau, Rocky Mountain, and the oil and gas lessees to produce cooperation leading to actual helium collection.

The Settlement Agreement addresses what would happen if Rocky Mountain failed to make the $116,579.90 payment in the specified time after receiving the contract-specified Data. That failure, the Agreement says, "shall trigger" a "Sunset Provision." J.A. 70. The Sunset Provision, item III.1 of the Agreement, specifies the consequences of such triggering:

> [Rocky Mountain] agrees to completely and forever release any and all claims, rights, and/or inter-

est in or arising from Federal Helium Contract
FLL 94-001, in their entirety and expressly in-
cluding any preferential rights detailed therein,
and any and all claims against [the Bureau], the
Department of the Interior and the United States,
relating to Federal Helium Contract FLL 94-001.
Furthermore [Rocky Mountain] agrees that upon
triggering of the Sunset Provision, [the Bureau]
may contract with third parties for Helium recov-
ery on the lands covered by Federal Helium Con-
tract FLL 94-001.

J.A. 73.

Relatedly, the Settlement Agreement contains a dis-
putes clause, which states: "The parties agree that, except
in the event of a triggering of the Sunset Provision de-
scribed at item III(1) herein, disputes or disagreements
arising from operation of this Agreement will be submit-
ted to the Honorable Judge Allan Goodman at the CBCA
for ADR [Alternative Dispute Resolution] pursuant to
CBCA rule 54." J.A.73. It is undisputed that the cited
rule 54 generally provides for CBCA participation in
dispute-resolution efforts, which are to be voluntary
unless the parties jointly agree to be bound, and that the
Settlement Agreement's disputes clause required only
voluntary efforts before Judge Goodman, not submission
of a dispute for a binding decision.

Under the Settlement Agreement, the Bureau sought
information from oil and gas lessees and provided Rocky
Mountain with information on December 5, 2008.[1] Rocky

---

[1]    We rely here on the record submitted to us in the
usual course of this appeal and, in addition, on the letter
jointly submitted to us by the parties to clarify matters
that arose at oral argument in the appeal. Appellant &
Appellee's Supp. Letter, Oct. 12, 2016. We appreciate the

Mountain objected that the information was incomplete, *i.e.*, was not "the Data" required by the Agreement. Thus, Rocky Mountain refused to pay the $116,579.90 due within 90 days of delivery of "the Data."

On March 4, 2009, before the end of that 90-day period for payment, Rocky Mountain informed the Bureau and Judge Goodman that it wanted to pursue mediation, thus invoking the Agreement's disputes clause. The Bureau "responded that it had supplied all the information necessary and therefore there was no dispute to mediate, but agreed to suspend the settlement payment deadline for ten days for [Rocky Mountain] to either make the payment or to explain exactly what information required by the settlement agreement [the Bureau] had failed to provide." Appellant & Appellee's Supp. Letter at 1, Oct. 12, 2016. Rocky Mountain repeated its request for mediation on April 16, 2009.

On April 21, 2009, the Bureau sent a letter to Rocky Mountain stating that it was invoking the Sunset Provision of the Settlement Agreement and "consider[ed] federal helium contract FLL-94-001 fully, finally, and permanently terminated." J.A. 82. It added: "Any recovery that [Rocky Mountain] may ultimately seek through litigation will be limited to money damages—and will be vigorously contested by [the Bureau]." *Id.* Rocky Mountain alleges that, within a year, the Bureau entered into a new lease with another company; the Bureau neither confirms nor denies that allegation.

The parties "continued to discuss possible ADR proceedings" with Judge Goodman. Appellant & Appellee's

---

parties' initiative and cooperation in providing the joint clarification. Because we do not go beyond the joint letter, we deny Rocky Mountain's motion to file additional materials responsive to the questions raised at oral argument.

Supp. Letter at 1.  In those conversations, "Judge Goodman never made a written or oral determination about whether the sunset provision had been triggered." *Id.* "It appears that neither party pursued ADR further after September 2009, and that the CBCA closed its ADR file in March 2010." *Id.* at 2.

On April 21, 2015, Rocky Mountain filed a complaint in the Court of Federal Claims.  Rocky Mountain alleged that the Bureau breached two contracts: (1) the Helium Contract and (2) the Settlement Agreement.  The United States filed a motion to dismiss.  The trial court granted the motion based on different jurisdictional and merits grounds.

As to the Helium Contract claim: The court first found that Rocky Mountain lacked constitutional standing because the Helium Contract had been terminated in 2004 and never reinstated.  It also dismissed that claim on the merits for the same reason.  As to the Settlement Agreement claim: The court found lack of subject matter jurisdiction on the ground that the disputes clause required submission of the dispute to Judge Goodman.[2]

Rocky Mountain appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

We review de novo the dismissal for lack of jurisdiction, which in this case involves no factual findings on

---

[2]    Rocky Mountain argues that the Court of Federal Claims also dismissed its Settlement Agreement breach claim for failure to state a claim.  We do not agree.  The court's discussion of Rocky Mountain's obligation to pay the $116,579.90 payment related to its merits dismissal of the Helium Contract breach claim (as never reinstated), not to the Settlement Agreement breach claim.

material disputed facts, and the dismissal for failure to state a claim. *See RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009); *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997).

Count I of Rocky Mountain's complaint alleges breach of the Settlement Agreement, while Count II alleges breach of the Helium Contract. Like the Court of Federal Claims, we discuss the 1994 Helium Contract first, then the 2008 Settlement Agreement. Count III of the complaint, seemingly covering both contracts, alleges breach of an implied duty of a good faith and fair dealing. We see no need for separate discussion of Count III. Our rulings on the two simple breach counts shall be taken to extend to Count III's implied-duty claim insofar as that count applies, respectively, to the Helium Contract and Settlement Agreement.

A

As to the Helium Contract, although Rocky Mountain's complaint might be taken to allege breach in 2004, when the United States declared the contract terminated, the complaint principally alleges breach years later. Specifically, it alleges breach on April 21, 2009, when the government stated that it deemed the contract fully, finally, and permanently terminated, and then during the year after April 21, 2009, when (the complaint alleges) the government contracted with another firm for helium extraction on the lands covered by the contract. According to Rocky Mountain, the termination was a breach because it rested on Rocky Mountain's failure to pay rent and that failure was in fact the result of the Bureau's own failure to cooperate with Rocky Mountain "to ensure access to gas streams to conserve and recover helium." Appellant's Br. at 1. And the government's alleged contracting with a new firm in the year after April 2009, Rocky Mountain alleges, was a breach because it violated

Rocky Mountain's preferential rights under the Helium Contract, which existed for one year after a termination.

1

The Court of Federal Claims first held that Rocky Mountain lacked constitutional standing to assert its claim for breach of the Helium Contract. If correct, that conclusion would support the jurisdictional dismissal. *Anderson v. United States*, 344 F.3d 1343, 1349 (Fed. Cir. 2003). But the standing conclusion is not correct.

Rocky Mountain met the constitutional standing requirement because it alleged a legally cognizable injury in fact that is "concrete and particularized" and "actual or imminent," causation of that injury by the conduct complained of, and redressability of the injury by a favorable decision on the merits of the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, no issue is or could be raised about any component of that familiar standard except the requirement of cognizable injury in fact. On that component of the standing test, Rocky Mountain alleges economic harm from a breach of contract. That allegation asserts a cognizable injury in fact: "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972). Rocky Mountain's allegations thus suffice to establish standing.

In concluding otherwise, the Court of Federal Claims relied on its determination that Rocky Mountain "was in default of the Helium Contract on August 1, 1996, when the annual rental payment was due," which led the Bureau to declare the contract terminated. J.A. 9. But that determination is a merits determination: it rejects Rocky Mountain's claim that the Helium Contract termination was a breach, a claim resting on the assertion that the non-payment of rent resulted from the Bureau's own deficient conduct. Such a merits determination is not a permissible one for the standing analysis, which assumes

the merits of a litigant's claim and determines whether "even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination." 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531 (3d ed. 2008 & Supp. 2016); *see, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."). The jurisdictional dismissal for lack of standing is therefore incorrect.

There is, however, a different jurisdictional bar to Rocky Mountain's claim of breach of the Helium Contract, but only to a limited extent. The jurisdiction of the Court of Federal Claims is limited by the six-year statute of limitations of 28 U.S.C. § 2501. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (holding that § 2501 states a jurisdictional limit). Rocky Mountain did not bring this action until April 2015—which was more than six years after any 2004 termination and the expiration of preferential rights one year after any such 2004 termination. The six-year limitations rule thus bars jurisdiction insofar as Rocky Mountain alleges that the Bureau wrongfully terminated the contract in 2004. On the other hand, there is no time bar insofar as Rocky Mountain alleges that the termination occurred on April 21, 2009, or later.

To the extent, then, that Rocky Mountain alleges a 2004 termination, we affirm the dismissal of the Helium Contract claim for lack of jurisdiction. Whether or not such a termination was wrongful, Rocky Mountain is out of time in challenging a 2004 termination. We otherwise reverse the jurisdictional dismissal.

### 2

The Court of Federal Claims separately dismissed Rocky Mountain's Helium Contract claim for failure to state a claim on which relief can be granted. It concluded

that it is beyond reasonable dispute that the Helium Contract was in fact terminated in 2004 and never reinstated. That merits conclusion defeats Rocky Mountain's breach claim, which is timely only to the extent it alleges that there was no termination until April 21, 2009. We agree with the termination conclusion and the merits dismissal based on it.

There is no dispute that the Court of Federal Claims was permitted to rely on the documents from which it drew its conclusion about the 2004 termination. Court of Federal Claims Rule 10(c) states (in words identical to Federal Rule of Civil Procedure 10(c)) that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Supreme Court has ruled that a court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). And the leading commentary has explained: "the contents of any attached writing must be considered by the court in a wide variety of contexts—for example, in determining the sufficiency of the statement of a claim for relief or a defense on a motion to dismiss under Rule 12(b)(6)"; the court "obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material"; and "[i]t appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d ed. 2004 & Supp. 2016).

Here, the complaint itself recounts that the Bureau on December 29, 2004, notified Rocky Mountain "that it had cancelled the Helium Contract for non-payment." J.A. 25. Moreover, the Settlement Agreement recites that the Bureau "canceled the Contract on December 29, 2004." J.A. 69. And it is beyond dispute that no reinstatement of the Helium Contract actually occurred.

Rocky Mountain's complaint may allege that the Settlement Agreement should have led to a reinstatement of the Helium Contract but that breach of the Settlement Agreement prevented such reinstatement. Such an allegation, however, would at most be relevant to the claim of Settlement Agreement breach, with whatever consequences may follow if that claim is proved. It does not support an allegation, contrary to the plain facts just stated, that the Helium Contract actually was in force until April 21, 2009, rather than having been terminated in 2004 (the only alternative on this record).

The motion-to-dismiss record thus requires the conclusion that the Helium Contract was terminated in 2004 and never reinstated. To the extent that Rocky Mountain alleges that the termination did not occur until 2009, that allegation is one on which relief cannot be granted. Therefore, insofar as the Helium Contract breach claim rests on that allegation, we affirm the merits dismissal of the Helium Contract breach claim—that claim otherwise being properly dismissed as jurisdictionally untimely.

## B

Rocky Mountain's claim of breach of the Settlement Agreement asserts that the Bureau did not provide Rocky Mountain all of "the Data" it was obliged to provide under that agreement. As a result, Rocky Mountain asserts, a contractual precondition to its obligation to make the $116,579.90 payment was not met. According to Rocky Mountain, the government therefore breached the agreement when it invoked the Sunset Provision on April 21,

2009, based on Rocky Mountain's failure to make that payment.

The Court of Federal Claims dismissed the Settlement Agreement breach claim for lack of jurisdiction, concluding that the disputes clause required Rocky Mountain to submit its challenge to the adequacy of the Bureau-furnished information to Judge Goodman of the CBCA. It is anything but clear that the premise would support the conclusion: we have seen no authority for treating a requirement like this one, which reaches no further than a requirement to invoke non-binding settlement assistance, as an override of an otherwise-clear jurisdictional grant to the court. But we need not decide that question. The parties, in their joint post-argument letter, have now made clear that Rocky Mountain did invoke Judge Goodman's assistance under CBCA Rule 54 and, in fact, did so before its $116,579.90 payment was due. The disputes clause was satisfied. At least on these newly established facts, the Court of Federal Claims did not lack jurisdiction over the Settlement Agreement breach claim based on the disputes clause.

The United States makes an alternative argument for lack of jurisdiction. It invokes the established principle that the source of law underlying a Tucker Act claim must be money-mandating, *i.e.*, be one that "can fairly be interpreted as mandating compensation by the Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 217 (1983); *see, e.g.*, *Higbie v. United States*, 778 F.3d 990, 993 (Fed. Cir. 2015). The United States asserts that the Settlement Agreement is not money-mandating.

We reject that contention. Where there is a breach of a government contract, "as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." *Sanders v. United States*, 252 F.3d 1329, 1334

(Fed. Cir. 2001). Typically, based on that presumption, "no further inquiry is required" into whether money damages are available. *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). We have found that money damages are not available in a breach of contract case only in a limited number of situations—*e.g.*, where a contract expressly disavows money damages, *see id.* (distinguishing such cases), where the breach alleged was of a confidentiality provision in an agreement defining the terms of an alternative dispute resolution process, *Higbie*, 778 F.3d at 995, where the agreement concerned a criminal defendant's release on bail, *Sanders*, 252 F.3d at 1331, and where a special government cost-sharing agreement, rather than a procurement or sales contract, was at issue, *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1344–46 (Fed. Cir. 2008).

This case involves no exceptions we have recognized. The Settlement Agreement is a commercial contract whereby the two parties set the terms for launching a continuing commercial arrangement, based on initial provision of information, followed by payment if the information was complete, and then the taking of further steps designed to lead to mutually beneficial commercial exploitation of valuable resources. This kind of commercial contract comes within the core of the strong background rule making monetary remedies available for contract breaches even when there is no express contract provision so stating.

### CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part, and we remand the case for further proceedings consistent with this opinion.

No costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**