RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WILBUR MACY; PAMELA J. STOWE,

    *Plaintiffs-Appellees*,

    *v.*

GC SERVICES LIMITED PARTNERSHIP,

    *Defendant-Appellant*.

No. 17-5593

───────────────

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:15-cv-00819—David J. Hale, District Judge.

Argued: January 23, 2018

Decided and Filed: July 30, 2018

Before: GIBBONS, WHITE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** William S. Helfand, LEWIS BRISBOIS BISGAARD & SMITH, Houston, Texas, for Appellant. James L. Davidson, GREENWALD, DAVIDSON RADBIL PLLC, Boca Raton, Florida, for Appellees. **ON BRIEF:** William S. Helfand, LEWIS BRISBOIS BISGAARD & SMITH, Houston, Texas, for Appellant. James L. Davidson, GREENWALD, DAVIDSON RADBIL PLLC, Boca Raton, Florida, for Appellees.

───────────────

## OPINION

───────────────

    HELENE N. WHITE, Circuit Judge. Plaintiffs Wilbur Macy and Pamela J. Stowe (Plaintiffs) brought this putative class action against GC Services Limited Partnership (GC), a

debt collector, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. Plaintiffs alleged that GC, in attempting to collect debt owed by Plaintiffs to GC's client, sent Plaintiffs letters that contained legally deficient warnings and advisories, in violation of Section 1692g of the FDCPA. GC moved to dismiss the action for lack of Article III standing, arguing that the alleged violations of the FDCPA do not constitute harm sufficiently concrete to satisfy the injury-in-fact requirement of standing. The district court denied GC's motion and later certified the class. We granted GC's petition for interlocutory review of the certification order and permitted GC to challenge Plaintiffs' standing. We now **AFFIRM** the district court's certification order and hold that Plaintiffs have Article III standing.

## I.  BACKGROUND

The facts are undisputed. Plaintiffs both received a letter from GC notifying them that their Synchrony Bank credit-card accounts had been referred to GC for collection. The letters contained the following statement about the procedure for obtaining verification of the debt and the name and address of the original creditor:

> [I]f you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

(R. 1-1, PID 14; R. 1-2, PID 16.)

Plaintiffs assert that the letters were deficient because they failed to inform Plaintiffs that GC was obligated to provide the additional debt and creditor information only if Plaintiffs disputed their debts *in writing*. Plaintiffs filed a complaint on their own behalf and on behalf of a class of similarly situated individuals, alleging violations of two subsections of the FDCPA that impose notice requirements containing the in-writing provisions, 1692g(a)(4) and (5).

GC moved to dismiss the suit for lack of standing. In denying GC's motion, the district court determined that GC's letters created a "substantial" risk that consumers would waive important protections afforded to them by the FDCPA by following GC's deficient instructions for obtaining verification of the debt or the identity of the original creditor.

GC reasserted its challenge to standing at the class-certification stage. The district court certified a class of Kentucky and Nevada consumers, rejecting GC's argument that certain elements of Federal Rule of Civil Procedure 23 were not satisfied because Plaintiffs had not shown that each member of the class had standing. We granted GC's petition for interlocutory review of the district court's certification order.

On appeal, GC argues that: 1) Plaintiffs' claims must be dismissed because Plaintiffs lack Article III standing, and 2) the district court abused its discretion by certifying the class "because the certified class is not limited to individuals who sustained a concrete injury." (Appellant's Br. at x.)

## II. STANDING

### A. Standard of Review

We "review a district court's decision regarding a plaintiff's Article III standing *de novo.*" *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citation omitted).

### B. Applicable Law

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). A plaintiff must possess "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct

complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* at 560–61 (alteration in original) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

"Each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (quoting *Lujan*, 504 U.S. at 561). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original) (footnote omitted) (quoting *Warth*, 422 U.S. at 518). Further, in class actions, "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon*, 426 U.S. at 40 n.20 (quoting *Warth*, 422 U.S. at 502); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, GC challenges Plaintiffs' ability to demonstrate the first standing requirement—injury in fact.

## C.    Injury in Fact and *Spokeo*

The Supreme Court in *Lujan* stated that injury in fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." 504 U.S at 578 (citation and internal quotation marks omitted). However, after *Lujan*, courts divided over whether a statutory violation, in and of itself, is sufficient to establish injury in fact; the Supreme Court addressed the issue in *Spokeo*. *See* 136 S. Ct. at 1549.[1] The Court held that a plaintiff does not

---

[1]*Spokeo* involved alleged violations of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. The purpose of the FCRA is to guarantee "fair and accurate credit reporting." *Id.* § 1681(a)(1). To that end, the statute imposes several requirements concerning the creation and use of consumer reports, including that consumer-reporting agencies must "follow reasonable procedures to assure maximum possible accuracy of the

"automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Thus, a plaintiff does not satisfy the standing requirement by alleging a "bare procedural violation" of a statute. *Id.* Rather, to establish injury in fact, a plaintiff must allege that the procedural statutory violation caused the plaintiff to suffer some harm that "actually exist[s]"; there must be an injury that is "real" and not "abstract" or merely "procedural." *Id.* at 1548–49 (internal quotation marks omitted).

However, the Court went on to explain that a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "in such a case [a plaintiff] need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549. The Court also explained that both tangible and intangible injuries, as well as a "risk of real harm" could "satisfy the requirement of concreteness." *Id.*[2]

Applying this framework to the claim before it, the Court stated:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550. Ultimately, the Court remanded the case without deciding whether Robins had adequately alleged injury in fact.

---

information" contained within consumer reports. *Id.* § 1681e(b). In his complaint, Robins alleged that Spokeo willfully failed to comply with the FCRA because Spokeo, a "people search engine" that gathers and provides information about an individual's address, phone number, marital status, approximate age, occupation, finances, shopping habits, etc., collected and disseminated incorrect information about Robins. Spokeo's profile of Robins stated that Robins was married, had children, was in his 50s, had a job, was relatively affluent, and held a graduate degree. According to Robins, this information was entirely inaccurate.

[2]*Spokeo* noted that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." 136 S. Ct. at 1549.

Unsurprisingly, the parties present diverging interpretations of *Spokeo*.**3** Plaintiffs argue that they need not allege any "*additional* harm beyond the one Congress has identified." GC, on the other hand, argues that "accusations of procedural violations of a statute, without a concrete injury, do not confer standing,"**4** and that standing exists only when a plaintiff alleges an injury *beyond* the harm to a statutory interest identified by Congress. We disagree.

A long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm. *See Spokeo*, 136 S. Ct. at 1549 ("Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" (alteration in original) (quoting *Lujan*, 504 U.S. at 578)); *id.* ("'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring))); *id.* ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989))). But the injury must be "both concrete and particularized." *Id.* at 1548 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)).

As the Second Circuit recognized in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), the Supreme Court's citation to *Lujan* and *Summers* is "instructive" because "[t]hese cases indicate that, to determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an

---

**3**The leading treatise observes "[t]he persisting obscurity of doctrine in this area," and notes that *Spokeo* "does little to relieve the uncertainty surrounding the Article III theories that limit Congressional authority to create a new legal right, invasion of which supports standing." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.13 (3d ed. 2017).

**4**Specifically, GC argues that Plaintiffs "clearly allege no more than an observed procedural violation of the FDCPA, [and] it is abundantly clear that a 'bare procedural violation, divorced from any concrete harm' does not satisfy the concrete injury requirement of Article III of the United States Constitution." (Appellant's Br. at 11 (quoting *Spokeo*, 136 S. Ct. at 1549).)

individual's concrete interests." *Id.* at 189. Thus, *Spokeo* does not "categorically . . . preclude[] violations of statutorily mandated procedures from qualifying as concrete injuries"; rather,

> where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient "risk of real harm" to the underlying interest to establish concrete injury without "need [to] allege any *additional* harm beyond the one Congress has identified."

*Id.* (citing *Spokeo*, 136 S. Ct. at 1549). However, "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact." *Id.*

On remand from the Supreme Court, the Ninth Circuit in *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ("*Spokeo II*"), *cert. denied*, 138 S. Ct. 931 (2018), adopted *Strubel*'s understanding of *Spokeo* as "instruct[ing] that an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." *Spokeo II*, 867 F.3d at 1113 (second alteration in original) (internal quotations marks omitted) (quoting *Strubel*, 842 F.3d at 190). This test, the Ninth Circuit said, "best elucidates the concreteness standards articulated by the Supreme Court in *Spokeo*." *Id.* Thus, relying on *Strubel*, *Spokeo II* held that courts confronting claims based on procedural violations must "ask: (1) whether the statutory provisions at issue were established to protect [a] concrete interest[] (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.*[5]

---

[5]Other circuits have suggested similar interpretations of *Spokeo*. *See, e.g.*, *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017) (holding that concrete harm may be shown by FCRA violation that causes a plaintiff to "suffer[] . . . the type of harm Congress sought to prevent when it enacted the FCRA"). *But see Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016) (affirming the dismissal of a complaint alleging violations of the Cable Communications Privacy Act for lack of standing, concluding that the risk of harm is insufficient); *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002–03 (11th Cir. 2016). In *Nicklaw*, the Eleventh Circuit held that a plaintiff, alleging a violation of New York's prompt-recording statute, did not have "standing to sue when he allege[d] only a failure to record a satisfaction of mortgage within a statutory period and fail[ed] to bring suit until after that statutory violation ha[d] been remedied." 839 F.3d at 1000. The court rejected the argument that "the intangible harm that occurs when the discharge of a mortgage is not timely recorded constitutes a concrete injury" even if the "legislature intended to create a substantive right to have the certificate of discharge timely recorded." *Id.* at 1002. As explained *infra*, however, this court in *Lyshe v. Levy*, 854 F.3d 855 (6th Cir.

The Sixth Circuit has also had occasion to interpret and apply *Spokeo*. In *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580–82 (6th Cir. 2016), we held that the plaintiffs lacked standing where they alleged that a health plan "fail[ed] to comply with the [Patient Protection and Affordable Care Act] provisions enjoining annual and life-time limitations on benefits" because the named "[p]laintiffs never show[ed] precisely what concrete harm they suffer[ed]," alleging only "in extreme generality, that certain members of their class suffer[ed] from conditions that [had] previously required medical expenses in excess of the benefit caps." We nevertheless "recognize[d] that the Supreme Court acknowledged that non-tangible injuries, including violations of statutory rights, may satisfy the constitutional showing of an injury-in-fact." *Id.* at 582. Recently, we applied *Spokeo* to alleged FDCPA violations in *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017), and although finding no standing in that case, we noted that "*Spokeo* allows for a bare procedural violation to create a concrete harm" in cases alleging "failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent." *Id.* at 859; *see also id.* at 860 (citing with approval *Strubel*'s conclusion that "a plaintiff may establish standing based on an alleged procedural violation if Congress conferred that procedural right to protect a plaintiff's concrete interest and if that violation presents a [material] risk of harm to that interest").

In sum, *Spokeo* categorized statutory violations as falling into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "*additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

---

2017), made clear that an alleged procedural violation of a statute may give rise to a sufficiently concrete injury for standing purposes when the violation presents a real risk of harm to a plaintiff's interest that Congress sought to protect.

**D.     Analysis**

Congress enacted the FDCPA because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Thus, the FDCPA's purpose "is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices," S. Rep. No. 95-382, at 2 (1977), and to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) ("As this court has noted, the FDCPA is extraordinarily broad, crafted in response to what Congress perceived to be a widespread problem." (citation and internal quotation marks omitted)); *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

To advance these goals, the FDCPA codified several specific consumer-protective rights, including those in Section 1692g, which sets out requirements for a debt collector's "initial communication with a consumer in connection with the collection of any debt," including that the communication notify the consumer of the right to dispute the debt and to seek verification of the validity of the debt through written notice and request to the creditor. 15 U.S.C. § 1692g(a). If the debtor makes such a written verification request, the debt collector must cease collection efforts until the verification is provided to the consumer. *Id.* § 1692g(b). Specifically, Section 1692g(a) requires a debt collector to provide a consumer with a notice that contains:

> **(4)** a statement that if the consumer notifies the debt collector *in writing* within [a] thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's *written* request within [a] thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphases added).**[6]**  And Section 1692g(b) provides that

[i]f the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Id.* § 1692g(b).

Significantly, the FDCPA gives consumers a private right of action to enforce its provisions against debt collectors.  15 U.S.C. § 1692k(a).

Assuming arguendo that the language of GC's letters constitutes a procedural violation of the FDCPA, Plaintiffs have demonstrated a sufficient "risk of real harm" to the underlying interest to establish concrete injury without the "need [to] allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

As the Second Circuit explained, "Section 1692g furthers th[e] purpose [of protecting debtors from abusive debt collection practices] by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that he owes the debt sought by the collector before paying it." *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017).  Importantly, "[t]he aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.  It is also to make the rights and obligations of a potentially hapless debtor as pellucid as possible." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008); *see also Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. 2017) ("We have no trouble concluding that § 1692g of the

---

**[6]**This notice must be either contained in the "initial communication with a consumer" or provided within five days of such communication.  15 U.S.C. § 1692g(a).  It is undisputed that GC did not inform Plaintiffs that they must dispute their debt in writing.  GC, however, does not concede that the omission of the in-writing requirement constitutes a violation of the FDCPA, and we express no opinion on that issue.

FDCPA 'protect[s] an individual's concrete interests. . . . Congress plainly sought to protect consumers' concrete economic interests by requiring debt collectors to comply with the notice provisions articulated in § 1692g." (citation omitted)).

GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor. In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (noting that Section 1692g "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."). If a consumer contests a debt by telephone rather than in writing, the consumer loses most of the protections for debtors set forth in Section 1692g[7]; the debt-collection agency is under no obligation to verify the debt and to cease all collection efforts as required by §1692g(b).

Plaintiffs allege in their complaint:

33. Defendant's misstatement of the rights afforded by the FDCPA would cause the least-sophisticated consumer[8] to understand, incorrectly, that validation of the debt, or a request for the name and address of the original creditor, could be obtained through an oral request, or by means other than in writing. Such a misunderstanding could lead the least-sophisticated consumer to waive or otherwise not properly vindicate her rights under the FDCPA.

34. Indeed, failing to dispute the debt *in writing*, or failing to request the name and address of the original creditor, *in writing*, would cause a consumer to waive the important protections afforded by 15 U.S.C. § 1692g(b)—namely, that a debt collector cease contacting the consumer until the debt collector provides the

---

[7]If consumers contest a debt orally, they may still dispute the debt, 15 U.S.C. § 1692g(a)(3), but they do not invoke their rights under Sections 1692g(a)(4), (a)(5), and (b), at issue here.

[8]The FDCPA is a strict liability statute that is liberally construed in favor of the consumer and courts evaluate FDCPA claims under the "least sophisticated consumer" standard. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–50 (6th Cir. 2014).

consumer with verification of the alleged debt and/or the original creditor's name and address, as requested.

(R. 1, PID 6-7.)

Thus, Plaintiffs allege a risk of harm that is traceable to GC's purported failure to comply with federal law, namely, the possibility of an unintentional waiver of FDCPA's debt-validation rights, including suspension of collection of disputed debts under Section 1692g(b). Without the information about the in-writing[9] requirement, Plaintiffs were placed at a materially greater risk of falling victim to "abusive debt collection practices." 15 U.S.C. § 1692(e); *see also Anarion Invs. LLC v. Carrington Mortg. Servs., LLC*, 794 F.3d 568, 572 n.2 (6th Cir. 2015) (noting that debt-collector abuse takes many forms, "including . . . misrepresentation of a consumer's legal rights"). And, as the FDCPA declares, its purpose is to eliminate such abusive practices. 15 U.S.C. § 1692(e). To that end, the FDCPA grants a private right of action to a consumer who receives a defective communication. *Id.* § 1692k.

GC advances several arguments in response. First, GC argues that "the undisputed evidence forecloses any finding of standing because it is undisputed [GC] follows a policy of honoring verbal disputes of debts for obtaining debt verification and verbal requests for the name and address of the original creditor exactly as it does disputes or requests made in writing." (Appellant's Br. at 14-15 (citing Decl'n of Mark Schordock, Executive Vice President of GC's Operations, R. 25-1, PID 245-247).) However, when considering whether pleadings fail to make out a justiciable case for want of standing, our analysis must be confined to the four corners of the complaint. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 706 (6th Cir. 2015). GC's policy is beyond the four corners of the complaint. Further, our task is merely to determine whether Plaintiffs' complaint adequately establishes standing such that they are entitled to an adjudication of their asserted claims. GC improperly asks us to examine issues that pertain to liability and damages. *See Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir.

---

[9]Congress distinguished between FDCPA protections that may be triggered orally (such as those in Section 1692g(a)(3)), and those that may only be invoked in writing (such as the ones in Sections 1692g(a)(4), (a)(5), and (b)).

2016) ("[A] merits determination is not a permissible one for the standing analysis, which assumes the merits of a litigant's claim.").

GC next argues that its failure to include the in-writing requirement never materialized into actual harm.[10] However, as explained, Plaintiffs may satisfy the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that GC's purported FDCPA violations created a material risk of harm to a congressionally recognized interest. The FDCPA's requirement that debt collectors "not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" is a core object of the FDCPA, which aims to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Including a materially false, deceptive, or misleading statement in a debt-collection communication may cause an individual "to lose the very . . . rights that the law affords him." *Strubel*, 842 F.3d at 190. And the communication here risked just that – without the required notice of the in-writing requirement, consumers risked waiving important verification rights under Section 1692g(a)(4) and (a)(5) and their right to suspension of collection of disputed debts pending verification under Section 1692g(b). Accordingly, "[h]aving alleged such procedural violations, [Plaintiffs were] not required to allege 'any *additional* harm' to demonstrate the concrete injury necessary for standing," *id.* at 191 (quoting *Spokeo*, 136 S. Ct. at 1549), and GC's claim that Plaintiffs have not alleged a concrete injury because they did not identify actual harm stemming from GC's defective notices fails.

GC next invokes *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), arguing that "a 'possible future injury,' which is the most [Plaintiffs] have alleged, even one that is concrete and particularized, is not imminent and does not confer standing." (Appellant's Br. at 10.) *Clapper*, however, is distinguishable. *Clapper* focused on allegations by attorneys and journalists who feared government surveillance of their communications with clients and sources in foreign countries. 568 U.S. at 406–07. The plaintiffs had curtailed telephone and electronic

---

[10]Specifically, GC argues that Plaintiffs "do not show, or even argue, the challenged letters led them to waive any right(s) under the FDCPA, or caused them any confusion or inconvenience. [Plaintiffs do not] allege they wished to dispute their debt or that they wished to request [that GC] provide the name and address of the original creditor. Indeed, the identity of the original creditor is not even relevant as [Plaintiffs] allege the original creditor is Synchrony Bank, who engaged [GC]." (Appellant's Br. at 14.)

communications and undertaken such expensive steps as foreign travel to reduce the risk of surveillance under the Foreign Intelligence Surveillance Act. *Id.* at 407. The Supreme Court found that "the costs [the plaintiffs] have incurred to avoid surveillance are simply the product of their fear of surveillance, and . . . such a fear is insufficient to create standing." *Id.* at 417. As the Ninth Circuit on remand in *Spokeo II* explained:

> In *Clapper*, the plaintiffs sought to establish standing on the basis of harm they would supposedly suffer from *threatened conduct* that had not happened yet but which they believed was reasonably likely to occur—specifically on their belief that "some of the people with whom they exchange[d] . . . information [were] *likely* targets of surveillance" under a federal statute. *Id.* at 1145 (emphasis added). The plaintiffs sought to strike down the statute authorizing such surveillance in order to remove the threat that their communications would eventually be intercepted. *Id.* at 1145–46. The question for the Court was how certain such *predicted* surveillance needed to be in order to create an injury in fact. In such a case, the Supreme Court explained that a plaintiff cannot show injury-in-fact unless the "threatened injury [is] *certainly impending*" as opposed to merely speculative. *Id.* at 1147–48 (emphasis added) (internal quotation marks omitted).
>
> ***
>
> *Clapper*'s discussion of what must be shown to establish standing based on anticipated conduct or an anticipated injury is therefore beside the point. *Clapper* did not address the concreteness of intangible injuries like the one [Plaintiff] asserts, and the Court in [*Spokeo*] did not suggest that Congress's ability to recognize such injuries turns on whether they would also result in additional future injuries that would satisfy *Clapper*. Many previous Supreme Court cases recognize that such statutorily recognized harms alone may confer standing (without additional resulting harm), none of which the Court purported to doubt or to overrule in [*Spokeo*].

*Spokeo II*, 867 F.3d at 1118 (citations omitted; first through fourth alterations in original).

GC next relies on *Lyshe* in arguing that we have already "applied *Spokeo* to a claim under the FDCPA and found no standing where, as here, the plaintiff did not sustain a concrete injury." (Appellant's Br. at 11.) In *Lyshe*, the alleged FDCPA violation arose when the defendants, in the course of attempting to collect the plaintiff's debt in state court, "made misstatements in their discovery requests about state procedural rules." 854 F.3d at 859. Specifically, the defendants told the plaintiff that his responses to their requests for admission needed to be sworn and

notarized, when in fact they did not. *Id.* at 857. The defendants also allegedly failed to serve their discovery requests in an electronic format, although they offered to do so upon request. *Id.* We held that those alleged violations, standing alone, did not state a concrete harm, reasoning that "the procedural violation alleged here—a violation of state law procedure not required under FDPCA," at most could have caused the plaintiff to "visit a notary and contact Appellees to obtain electronic copies of the discovery," which "was not the type of harm the FDCPA was designed to prevent." *Id.* at 859. Thus, *Lyshe* is distinguishable. Here, the harm Plaintiffs allege—being misled by a debt collector about the rights the FDCPA gives to debtors—is precisely the type of harm—abusive debt-collection practices—the FDCPA was designed to prevent.

Nor is *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), our most recent opinion addressing FDCPA standing, of any help to GC. *Hagy* involved a claim alleging violations of the FDCPA based on a letter that failed to disclose that it was a "communication . . . from a debt collector." *Id.* at 621-23. In dismissing the claim on standing grounds, we observed that the plaintiffs "have not shown, in truth have not even tried to show, that this failure to disclose caused them any actual harm beyond [a] 'bare procedural violation.'" *Id.* at 622. In fact, the allegedly deficient letter turned out to be helpful to the plaintiffs. *Id.* To be sure, *Hagy* did not conduct a risk-of-harm analysis, but no risk of harm was alleged. Indeed, *Hagy* explained that the claim failed in part because the plaintiffs did not allege any risk of harm, such as "that the non-disclosure created a risk of double payment," which is the kind of abusive debt-collection practice the mandated disclosures were aimed to prevent. *Id.* at 621–22. Thus, *Hagy* is not inconsistent with *Lyshe*, *Strubel*, *Spokeo II*, or our decision here.

Finally, GC argues that "[t]he district court incorrectly found standing based on potential harm to class members instead of" to the two named Plaintiffs. (Appellant's Br. at 15-17.) GC is correct that potential class representatives must demonstrate "individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). However, we conclude de novo that the named Plaintiffs have standing, thus, even if the district court found standing

based on harm to potential class members, any error in the district court's analysis is of no significance.

In sum, Plaintiffs have satisfied the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that GC's purported FDCPA violations created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

## III.  CLASS CERTIFICATION

### A.      Standard of Review

We "review the district court's decision to grant or deny class certification under an abuse-of-discretion standard." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015) (citation omitted). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). In the class action context, a district court is given "substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Rikos*, 799 F.3d at 504 (citation and internal quotation marks omitted). Therefore, our review is "very limited"; we may reverse "only if a strong showing is made that the district court clearly abused its discretion." *Young*, 693 F.3d at 536 (citation omitted).

### B.      Applicable Law

To merit certification, a putative class must satisfy the four requirements of Rule 23(a):

> (1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical . . . of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (alterations in original) (internal quotation marks omitted). A putative class must also fit within one of the three types of classes listed in Rule 23(b). The only type relevant here is Rule 23(b)(3), which permits a class to be

certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**C.     Analysis**

GC's opposition to certification rests primarily on its contention that Plaintiffs lack standing.  Thus, having rejected GC's standing argument, we reject GC's class certification challenge as well.

GC argues that "there is no commonality as [Plaintiffs] have failed in their burden to demonstrate any injury at all." (Appellant's Br. at 18-19, 21.)[11]  The district court found that Plaintiffs satisfied the commonality requirement because, as Plaintiffs alleged,

> "[e]ach class member . . . has the same claim against" [GC]: that the company violated the FDCPA by failing to include the in-writing requirement in the debt-collection letters it sent to them[, and the] [r]esolution of this "common contention . . . will resolve an issue that is central to the validity of each one of the claims in one stroke." [*Wal-Mart Stores, Inc. v.*] *Dukes*, 564 U.S. [338,] 350 [(2011)].

*Macy v. GC Servs. Ltd. P'ship*, 318 F.R.D. 335, 339 (W.D. Ky. 2017) (record citations omitted). As the district court noted, "[r]eceipt of similar dunning letters from the same debt collector has repeatedly been found to satisfy Rule 23's commonality requirement." *Id.* (citing *Fariasantos v. Rosenberg & Assocs.*, 303 F.R.D. 272, 275 (E.D. Va. 2014); *Edwards v. McCormick*, 196 F.R.D. 487, 494 (S.D. Ohio 2000)). Other FDCPA cases also support the district court's finding regarding commonality. *See, e.g.*, *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) ("The requisite common nucleus of operative fact exists in FDCPA claims when the controversy arises from a standard form debt collection letter." (citations omitted)); *Bicking*, 2011 WL 5325674, at *2; *Wess v. Storey*, No. 08-623, 2011 WL 1463609, at *7 (S.D. Ohio Apr.

---

[11]Specifically, GC contends that "because "neither [Plaintiff] presented any allegation or evidence that either sustained the same risk; neither alleged either disputed the debt, sought to verify the debt, or sought the name and address of the original creditor. In fact, there was no actual risk to either because it is undisputed they made no effort to contact [GC]." (Appellant's Br. at 18-19.)

14, 2011). Apart from merely repackaging its standing argument with a commonality label, GC makes no effort to argue that the district court abused its discretion.

The same is true of GC's argument regarding adequacy, (Appellant's Br. at 21 ("The record does not support the district court's implied finding that [Plaintiffs] have a common interest with the members of the class because neither [Plaintiff] alleged an injury in fact.")), and typicality, (*id.* at 18 ("Here, there is clearly no typicality. As already shown, [Plaintiffs] have not alleged they sustained any injury as a result of the wording of the letters.")). GC's argument regarding predominance is also a derivative of its standing argument. (*Id.* at 22-23 ("[E]ach individual would have to prove he or she contacted [GC] by a non-written means to dispute his or her debt or request the name and address of his or her original creditor to prove he or she suffered the requisite 'concrete and particularized' injury. There is no evidence all of the class members sustained a concrete injury.").)

Thus, because GC failed to demonstrate that the district court abused its discretion, we will not disturb the district court's grant of class certification.

## IV. CONCLUSION

We **AFFIRM** the district court's grant of class certification and hold that Plaintiffs have Article III standing.